FILED by MG D.C.
ELECTRONIC

June -4, 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Civ. 12-80597-Cv-Marra/Brannon**

**FEDERAL TRADE COMMISSION,**

Plaintiff,

v.

**STERLING PRECIOUS METALS, LLC**, a Florida Limited Liability Corporation,

**KERRY MARSHALL,**

**MATTHEW MEYER**, and

**FRANCIS RYAN ZOFAY,**

Defendants.

## PLAINTIFF FEDERAL TRADE COMMISSION'S COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 57b.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

## DEFENDANTS

6. Defendant Sterling Precious Metals, LLC ("Sterling Precious Metals"), is a Florida limited liability corporation with its principal place of business in Boca Raton, Florida. Sterling Precious Metals transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others,

Sterling Precious Metals has advertised, marketed, or sold precious metals investments to consumers throughout the United States.

7. At times material to this Complaint, acting alone or in concert with others, Defendant Kerry Marshall ("Marshall") has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Sterling Precious Metals, including the acts and practices set forth in this Complaint. Marshall resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. Marshall holds himself out as a member of Sterling Precious Metals and has held himself out as a broker with the company. Marshall is also a signatory on Sterling Precious Metal's financial accounts and receives and responds to consumers' complaints and inquiries.

8. Defendant Matthew Meyer ("Meyer") has been an owner and a managing member of Sterling Precious Metals. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Sterling Precious Metals, including the acts and practices set forth in this Complaint. Meyer resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. He has been responsible for hiring and supervising employees and is a signatory on the company's financial accounts. Meyer has held himself out as owner of the company and has received and responded to consumers' complaints and inquiries.

9. Defendant Francis Ryan Zofay ("Zofay") is an owner and a managing member of Sterling Precious Metals. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Sterling Precious Metals, including the acts and practices set forth in this

Complaint. Zofay resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. Zofay is responsible for supervising employees. Zofay has signed legal documents on behalf of the company. He is a signatory on Sterling's financial accounts and receives and responds to consumers' complaints and inquiries.

## COMMERCE

10. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

11. Since at least March 2010, Defendants have offered for sale and sold precious metals to consumers nationwide. Defendants collectively operate an investment scheme in which telemarketers promise consumers, some of whom are senior citizens and retirees, that consumers can earn large profits quickly and safely with precious metals.

12. Defendants' telemarketers make outbound calls to solicit consumers as well as take inbound consumer calls. During these calls, Defendants use high-pressure telephone sales tactics to convince consumers to purchase precious metals and, in the process, provide consumers with an inaccurate and incomplete description of their sales offer.

13. Defendants tell consumers that the investments they are offering are lucrative. Defendants represent that precious metals prices are going to rise and that consumers who invest in precious metals are likely to earn substantial profits in a short period of time. Defendants advise consumers that they are experienced brokers and that they predict metals will increase in

value within a short time period. In fact, precious metals prices are volatile and Defendants cannot reasonably predict precious metals prices.

14. Defendants assure consumers, many of whom are investing their retirement savings, that precious metals have a low or minimal risk of loss. Defendants tell consumers that precious metals are a safe investment. Defendants also advise consumers that they do not trade options or risky futures contracts, but instead only trade tangible, physical assets, such as bars, bullion, and coins. These statements made to consumers are consistent with the Defendants' telemarketing script, which specifically states, "We don't trade options or risky futures contracts. We deal only with tangible, physical assets- in this case, bars, bullion and coins."

15. After leading consumers to believe that the offered precious metals investments are lucrative and safe, Defendants fail to clearly disclose the total costs of the investments.

16. Defendants often fail to clearly inform consumers that their precious metals investments are sold as a leveraged or financed transaction, meaning that a consumer's investment is used to pay for about 20% of the precious metals purchased, with the remaining 80% being financed to the consumer through a loan with interest. Thus, some consumers are unaware that the money that they agreed to invest with Defendants will only pay a fraction of the total cost of the precious metals purchased. Even when Defendants mention to consumers that the precious metals transactions are leveraged, they misstate or do not clearly explain the terms, conditions, and costs of the leveraged transaction, such as the fact that consumers must pay interest charges on the leveraged portion of the transaction.

17. Defendants also misrepresent and/or fail to clearly disclose the fees and commissions that consumers are required to pay to purchase or acquire the precious metals. For instance, Defendants fail to clearly disclose that consumers must pay an account opening fee of

$200. In addition, Defendants generally tell consumers that 15% of the money that consumers have agreed to pay to Defendants will be applied as a commission, when, in fact, Defendants charge 15% of the total costs of consumers' precious metals purchase - including the leveraged portion of the transaction. In many instances, this results in consumers paying as much as 39% of their investments in commissions.

18. Defendants often fail to clearly inform consumers that they are likely to receive equity calls on their accounts, which will require consumers to invest additional money to keep their precious metals from being liquidated.

19. After listening to Defendants' telemarketing pitch and expressing interest in purchasing precious metals investments, Defendants tell consumers to send money to purchase the precious metals investment.

20. After sending money to Defendants, consumers generally receive a risk disclosure statement and sometimes also a contract. Such documents, however, fail to adequately disclose to consumers the significant costs and risks associated with the precious metals investments.

21. The majority of consumers who purchase precious metals from Defendants lose money. Consumers' equity in their precious metals investments is drained by the fees and commissions that are assessed at the inception of their transactions and by the constant accumulation of storage fees and interest charges on the leverage portion of their accounts. These fees, commissions, and interest charges negatively affect consumers' ability to break even or profit on the precious metals investments.

22. When a consumer's equity decreases sufficiently, an equity call is issued and the

consumer must either invest additional money or allow the precious metals to be liquidated at a loss, making the investments risky. In some instances, consumers' accounts are liquidated without notice to consumers.

## VIOLATIONS OF THE FTC ACT

23. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

24. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### Misrepresentations in Violation of Section 5

25. In numerous instances, in connection with the marketing, offering for sale, or sale of precious metals, Defendants, directly or indirectly, expressly or by implication, make material representations, including that:

(a) Consumers are likely to earn high or substantial profits in a short time period on the precious metals sold by Defendants; and

(b) The precious metals sold by Defendants are low or minimal risk investments.

26. In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 25 of this Complaint:

(a) Consumers are not likely to earn high or substantial profits in a short time period on the precious metals sold by Defendants; and

(b) The precious metals sold by Defendants are not low or minimal risk investments.

27. Therefore, Defendants' representations as set forth in Paragraph 25 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Failing to Adequately Disclose Material Information in Violation of Section 5

28. In numerous instances, in connection with the marketing, offering for sale, or sale of precious metals, Defendants, directly or indirectly, expressly or by implication, represent that the precious metals sold by Defendants are likely to earn consumers high or substantial profits in a short time period, with a low or minimal risk of loss of the investment.

29. In numerous instances in which Defendants make the representation set forth in Paragraph 28, Defendants fail to adequately disclose to consumers material information concerning the precious metals, including:

(a) The total fees, commissions, interest charges, and leverage balances that consumers are required to pay; and

(b) That consumers are likely to receive equity calls that will require consumers to pay additional money or to liquidate their precious metals.

30. Defendants' failure to adequately disclose the material information described in Paragraph 29, in light of the representation described in Paragraph 28, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

31. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, in

1994. On August 16, 1995, the FTC adopted the Telemarketing Sales Rule (the "Original TSR"), 16 C.F.R. Part 310, as subsequently amended.

32. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

33. Defendants have initiated "outbound telephone calls" on behalf of persons who are "sellers," as those terms are defined in the TSR, 16 C.F.R. § 310.2(v) and (aa).

34. The TSR applies to inbound telephone calls – telephone calls initiated by a consumer – in response to an advertisement relating to investment opportunities. 16 C.F.R. § 310.6(b)(5).

35. The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability. 16 C.F.R. § 310.3(a)(2)(vi).

36. The TSR also prohibits sellers and telemarketers from failing to disclose truthfully, in a clear and conspicuous manner, and before a customer pays for goods or services:

(a) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer. 16 C.F.R. § 310.3(a)(1)(i); and

(b) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer. 16 C.F.R. § 310.3(a)(1)(ii).

37. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an

unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### Misrepresenting an Investment Opportunity

38. In numerous instances, in connection with the telemarketing of precious metals, Defendants, directly or indirectly, expressly or by implication, misrepresent the risk, earnings potential, or profitability of the precious metals by falsely claiming that:

(a) Consumers are likely to earn high or substantial profits in a short time period on the precious metals sold by Defendants; and

(b) The precious metals sold by Defendants are low or minimal risk investments;

39. Defendants' acts or practices, as described in Paragraph 38, violate the TSR, 16 C.F.R. § 310.3(a)(2)(vi).

## COUNT IV

### Failing to Clearly and Conspicuously Disclose Total Costs

40. In numerous instances, in connection with the telemarketing of precious metals, Defendants fail to disclose truthfully, in a clear and conspicuous manner, before a customer pays for goods and services offered, material information about the total costs to purchase or receive or the quantity of the precious metals, including, but not limited to, disclosing the total fees, commissions, interest charges, and leverage balances that consumers are required to pay.

41. Defendants' acts or practices, as described in Paragraph 40, violate the TSR, 16 C.F.R. § 310.3(a)(1)(i).

## COUNT V

**Failing to Clearly and Conspicuously to Disclose Material Conditions**

42. In numerous instances, in connection with the telemarketing of precious metals, Defendants fail to disclose truthfully, in a clear and conspicuous manner, before a customer pays for goods and services offered, all material restrictions, limitations, or conditions to purchase or receive the precious metals, including, but not limited to, that consumers are likely to receive equity calls that will require consumers to pay additional money or to liquidate their precious metals.

43. Defendants' acts or practices, as described in Paragraph 42, violate the TSR, 16 C.F.R. § 310.3(a)(1)(ii).

## CONSUMER INJURY

44. Consumers suffer and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

45. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

46. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the

Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 4(a) of the Telemarketing Act, 15 U.S.C. § 6103(a), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, and appointment of a receiver;

B. Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

**WILLARD K. TOM**
General Counsel

Dated: June 4, 2012

/s/ Gideon E. Sinasohn

**GIDEON E. SINASOHN**
Special Florida Bar No. A55001392
Email: gsinasohn@ftc.gov
Telephone: (404) 656-1361

**DAMA J. BROWN**
Special Florida Bar No. A5501135
Email: dbrown1@ftc.gov
Telephone: (404) 656-1361

225 Peachtree Street, N.E., Suite 1500
Atlanta, Georgia 30303

(404) 656-1379 (Facsimile)

Attorneys for Plaintiff
**FEDERAL TRADE COMMISSION**