UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80597-CIV-MARRA

FEDERAL TRADE COMMISSION,

       Plaintiff,

vs.

STERLING PRECIOUS METALS, LLC, a
Florida Limited Liability Corporation,
KERRY MARSHALL,
MATTHEW MEYER, and
FRANCIS RYAN ZOFAY,

       Defendants.

_____/

## OPINION AND ORDER

    This cause is before the Court upon Defendant Kerry Marshall's Motion to Dismiss Complaint or in the Alternative, for a More Definite Statement and Incorporated Memorandum of Law (DE 38). Plaintiff Federal Trade Commission ("FTC") responded. (DE 41). No reply was filed. The Court has considered Defendant's motion, the FTC's response, and the record, and is otherwise advised in the premises.

### I.  Introduction[1]

    This is an action brought by the FTC against Defendant Sterling Precious Metals, LLC and three individuals associated with the company: Kerry Marshall, Matthew Meyer, and Francis Ryan Zofay. (Complaint ¶¶ 6–9). The Complaint alleges that "Defendants collectively operate an investment scheme in which telemarketers promise consumers, some of whom are senior citizens and retirees, that consumers can earn large profits quickly and safely with precious metals." *Id.* ¶ 11.

---

[1] When considering Defendant Marshall's motion to dismiss, the Court must accept all of the FTC's allegations as true in determining whether it has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

"After leading consumers to believe that the offered precious metals investments are lucrative and safe, Defendants fail to clearly disclose the total costs of the investments." *Id.* ¶ 15.  Specifically, the Complaint provides:

> Defendants often fail to clearly inform consumers that their precious metals investments are sold as a leveraged or financed transaction, meaning that a consumer's investment is used to pay for about 20% of the precious metals purchased, with the remaining 80% being financed to the consumer through a loan with interest.  Thus, some consumers are unaware that the money that they agreed to invest with Defendants will only pay a fraction of the total cost of the precious metals purchased.  Even when Defendants mention to consumers that the precious metals transactions are leveraged, they misstate or do not clearly explain the terms, conditions, and costs of the leveraged transaction, such as the fact that consumers must pay interest charges on the leveraged portion of the transaction.

*Id.* ¶ 16.  Finally, the Complaint alleges that Defendants misrepresented fees and commissions that consumers were required to pay, *id.* ¶ 17, or that consumers were "likely to receive equity calls on their accounts, which will require consumers to invest additional money to keep their precious metals from being liquidated."  *Id.* ¶ 18.

The Complaint sets forth two violations of section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 53(b) and 57b: misrepresentation (Count I) and failing to adequately disclose material information (Count II).  The Complaint also set forth three violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"),15 U.S.C. §§ 6101–6108: misrepresenting an investment opportunity (Count III), failing to clearly and conspicuously disclose total costs (Count IV), and failing to clearly and conspicuously disclose material conditions (Count V). As to Defendant Marshall, the Complaint provides that

> [a]t times material to this Complaint, acting alone or in concert with others, Defendant Kerry Marshall ("Marshall") has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Sterling Precious Metals, including the acts and practices set forth in this Complaint. Marshall resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. Marshall holds himself out as a member of Sterling Precious Metals and has held himself out as a

2

broker with the company. Marshall is also a signatory on Sterling Precious Metal's financial accounts and receives and responds to consumers' complaints and inquiries.

(Complaint ¶ 7).

Defendant Marshall moves to dismiss the Complaint on the grounds that the FTC does not sufficiently allege that Marshall—as an individual—participated in, ratified, or committed any specific acts in violation of the FTCA or the Telemarketing Act. Thus, according to Marshall, the FTC's Complaint "fails to allege factual allegations to support a claim against [him.]" (DE 38 at 4). Marshall further alleges that the FTC's claims "allege an offshoot of statutory fraud and, therefore, have not met the heightened pleading requirements of [Federal Rule of Civil Procedure 9(b).]"[2] Alternatively, in the event that the Court denies Marshall's motion to dismiss, he seeks an order compelling the FTC to provide a more definite statement under Federal Rule of Civil Procedure 12(e).[3]

The FTC responds by suggesting that Rule 9(b) does not apply to the claims at issue, that the claims as alleged satisfy the requirements of Rule 8(a),[4] and that a more definite statement under Rule 12(e) is unwarranted. The Court agrees with the FTC. For the reasons that follow, Marshall's motion to dismiss or for a more definite statement is denied.

## II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon

---

[2] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[3] Rule 12(e) provides, in pertinent part, that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."

[4] As set forth below, the Court finds that the FTC's claims are not held to the heightened pleading requirements of Rule 9(b), so the Court need not address the FTC's argument that its claims meet that threshold.

which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A court may grant a motion for a more definite statement where a pleading is "so vague or ambiguous that a party cannot be reasonably required to frame a responsive pleading." Fed. R. Civ. P. 12(e). "Motions for more definite statement are disfavored in light of the liberal pleading requirements of the Federal Rules of Civil Procedure and are not to be used as a substitution for discovery." *Graham v. Citi Trends, Inc.*, 07-80005 CIV, 2007 WL 2412841, at *2 (S.D. Fla. Aug. 21, 2007) (citing *Bazal v. Belford Trucking Co.*, 442 F. Supp. 1089, 1101 (S.D. Fla. 1977)). The issue before the Court is wether the FTC's Complaint is sufficiently specific so as to place Marshall on notice of the claims against him.

### III.  Discussion

Section 5 of the FTCA makes "unfair or deceptive acts or practices in or affecting commerce" unlawful. 15 U.S.C. § 45(a)(1). "To establish liability under section 5 of the FTCA, the FTC must

establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances; and (3) the representation was material." *Fed. Trade Comm'n v. USA Fin., LLC*, 415 F. App'x 970, 973 (11th Cir. 2011) (quoting *Fed. Trade Comm'n v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003)). The statute does not require an intent to deceive. *Id.* at 974 n.2. "An individual may be held liable under the FTCA for corporate practices if the FTC shows 'that the individual defendants participated directly in the practices or acts or had authority to control them. . . . The FTC must then demonstrate that the individual had some knowledge of the practices.'" *Id.* at 974 (quoting *Fed. Trade Comm'n v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996)).[5]

Under the Telemarketing Act, the FTC promulgated and enforces the Telemarketing Sales Rule ("TSR"), 16 C.F.R. part 310, which prohibits deceptive and abusive telemarketing acts or practices. Sections 310.3(a)(1)(i) and 310.3(a)(1)(ii) of the TSR provide that "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct: (1) Before a customer consents to pay for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner . . . (i) [t]he total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; and (ii) [a]ll material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer."[6] Section 310.3(a)(2)(vi) of the TSR provides that "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to

---

[5] Defendant Marshall's motion to dismiss does not attack the complaint on the basis that the FTC has failed to allege sufficiently the three elements necessary to establish liability under the FTCA. Instead, Defendant focuses exclusively on whether the FTC has sufficiently stated a claim against him individually. The Court focuses its analysis accordingly.

[6] Count IV of the Complaint alleges a violation of § 310.3(a)(1)(i). Count V alleges a violation of § 310.3(a)(1)(ii).

engage in . . . [m]isrepresenting, directly or by implication, in the sale of goods or services . . . [a]ny

material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings

potential, or profitability."[7]

As a threshold matter, the Court acknowledges that there is a split in authority regarding

whether claims brought under the FTCA—and by extension the TSR—require application of Federal

Rule of Civil Procedure 9(b) and its heightened pleading standard. *Compare Fed. Trade Comm'n*

*v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551(ILG)(RLM), 2012 WL 1890242, at *6–*7

(E.D.N.Y. May 23, 2012) (noting in dicta that a § 5 claim is not a claim of fraud subject to Rule

9(b)'s pleading requirements) *and Fed. Trade Comm'n v. Freecom Commc'ns, Inc.*, 401 F.3d 1192,

1203 n.7 (10th Cir. 2005) (same) *with Fed. Trade Comm'n v. Lights of Am., Inc.*, 760 F. Supp. 2d

848, 854 (C.D. Cal. 2010) (finding that "Rule 9(b) applies to claims for violations of the FTC Act").

The Court finds the rationale of the Tenth Circuit in *Freecom Communications* persuasive: "A § 5

claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule

9(b) . . . . Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or

injury to establish a § 5 violation." 401 F.3d at 1203 n.7.

Here, the FTC alleges that Marshall formulated, directed, controlled, had the authority to

control, or participated in the acts and practices of Sterling Precious Metals that violate the FTCA

and the Telemarketing Act. Complaint ¶ 7. The FTC further alleges that Marshall holds himself out

as a member of Sterling and has held himself out as a broker with the company. *Id.* Finally, the FTC

alleges that Marshall is a signatory on Sterling's financial accounts and receives and responds to

consumers' complaints and inquiries. *Id.* Marshall contends that, unlike the other individually named

Defendants, he "is not alleged to be or to have been an owner or member of Sterling" or to have "any

---

[7] Count III alleges a violation of § 310.3(a)(2)(vi).

supervisory or hiring authority." (DE 38 at 2). Marshall also contends that he is not alleged to be a corporate officer. *Id.* Thus, the crux of Marshall's argument is that the Complaint's references to Defendants *collectively* does not fulfill the FTC's obligation to plead specific acts that Defendant Marshall committed, ordered, or ratified *individually*. Marshall's argument misses the mark because "[t]he allegations pertaining to the Defendants as a whole provide the context that allows this Court to understand and weigh the significance of the claims specifically relating to [him]." *Fed. Trade Comm'n v. Innovative Mktg.*, 654 F. Supp. 2d 378, 388 n.3 (D. Md. 2009).

The allegations pertaining to the Defendants as a whole include the following: Defendants collectively operate an investment scheme in which telemarketers promise consumers, some of whom are senior citizens and retirees, that consumers can earn large profits quickly and safely by investing in precious metals (Complaint ¶ 11); Defendants' telemarketers make outbound calls to solicit consumers as well as take inbound consumer calls, use high-pressure telephone sales tactics to convince consumers to invest in the metals, and provide consumers with an inaccurate and incomplete description of their sales offer (Complaint ¶ 12); Defendants tell consumers that the investments they are offering are lucrative and that the consumers are likely to earn substantial profits quickly while in reality precious metal prices are volatile and Defendants cannot reasonably predict the prices (Complaint ¶ 13); Defendants assure consumers that the investment is low risk (Complaint ¶ 14); Defendants fail to clearly disclose the total costs of the investments or that the metal investments are sold as leveraged or financed transactions (Complaint ¶¶ 15–16); even when Defendants advise consumers that the transactions are leveraged, Defendants misstate or fail to clearly explain the terms, conditions, and costs of the transaction (Complaint ¶ 16); Defendants misrepresent or fail to clearly disclose the fees and commissions that consumers are required to pay to purchase or acquire the metals (Complaint ¶ 17); and Defendants often fail to clearly inform

consumers that the consumers are likely to receive equity calls on their accounts, which will require the consumers to invest additional money to keep their metals from being liquidated (Complaint ¶ 18). These allegations pertaining to Defendants *as a whole* provide the context that allows this Court to understand and weigh the significance of the FTC's claims that Marshall formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Sterling Precious Metals that violate the FTCA and the Telemarketing Act; that Marshall holds himself out as a member of Sterling and has held himself out as a broker with the company; and that Marshall is a signatory on Sterling's financial accounts and receives and responds to consumers' complaints and inquiries.

The allegations describing the mechanics of Sterling's scheme reveal the critical importance of Sterling's relationship with its brokers because it is the brokers who allegedly spark consumer interest and participation in Sterling's scheme via deception and misrepresentation. *See Innovative Mktg.*, 654 F. Supp. 2d at 388 n.3. Moreover, a broker who served as a signatory on his business's financial accounts—a broker like Marshall—would seem to be uniquely positioned to verify the veracity of claims relating to potential consumer profitability or risk of investment. Taking the allegations of the FTC's Complaint as true, Marshall held himself out as broker with Sterling and was a signatory on Sterling's financial accounts who received and responded to consumers' complaints and inquiries. These factual allegations support each of the elements of the FTC's causes of action for individual liability under the FTCA and the Telemarketing Act because, based on these allegations, the Court can infer that Marshall "was aware of, and complicit in," Sterling's unlawful conduct.

### IV. Conclusion

Applying the liberal pleading standard of Rule 8(a) and taking the allegations of the FTC's

complaint as true, the Court finds that Defendant Marshall—in his capacity as a broker and a signatory who interacted with consumers—made material misrepresentations in his telemarketing calls that created the deceptive impression that Sterling was offering consumers a low-risk, high-reward investment. *See USA Fin., LLC*, 970 F.3d at 973. The Court further finds that Defendant Marshall "had some knowledge" of Sterling's practices. *Id.* at 974 (quoting *Gem Merch. Corp.*, 87 F.3d at 470). Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Kerry Marshall's Motion to Dismiss Complaint or in the Alternative, for a More Definite Statement and Incorporated Memorandum of Law (DE 38) is **DENIED.**[8]

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 14th day of February, 2013.

_____
KENNETH A. MARRA
United States District Judge

---

[8] The FTC need not provide Defendant Marshall a more definite statement under Rule 12(e) because the Court finds that the FTC's Complaint gives Marshall fair notice of what the FTC's claim is and the ground upon which it rests. *See* Fed. R. Civ. P. 8(a).